```
                                              FILED
                                    CLERK, U.S. DISTRICT COURT

                                         Jun 12, 2015

                                    CENTRAL DISTRICT OF CALIFORNIA
                                    BY:      PMC      DEPUTY
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| STEPHANIE COUNTS and SHARI GOLD, | CASE NO. 2:14-cv-00396-SVW-CW |
|---|---|
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| v. | |
| ELIZABETH MERIWETHER, et al., Defendants. | |

## I. INTRODUCTION

Plaintiffs Stephanie Counts ("Counts") and Shari Gold ("Gold") assert that Defendants started from *Square One* to create the pilot *Chicks and Dicks*, which further developed into the television series *New Girl*. On April 3, 2015, Plaintiffs filed their Third Amended Complaint ("TAC") against twenty-two defendants: Elizabeth Meriwether and Elizabeth Meriwether Pictures (collectively, "Meriwether"); William Morris Endeavor Entertainment, LLC ("WME"); Peter Chernin, the Chernin Group, LLC, and Chernin Entertainment, LLC (collectively, "Chernin"); Twenty-First Century Fox, Inc. and ten related entities (collectively, "Fox"); Jacob Kasdan ("Kasdan"); Brett Baer ("Baer"); David Finkel ("Finkel"); and American Nitwits. (Dkt. 97.) In their TAC, Plaintiffs assert claims for direct copyright infringement, contributory copyright infringement, vicarious copyright infringement, and "Idea Theft—Breach of

1  Contract/Theft or Conversion."

2  Presently before the Court is Defendants' motion to dismiss Plaintiffs' "Breach of
3  Contract/Theft or Conversion" claim. As set forth below, the Court GRANTS Defendants'
4  motion and DISMISSES WITH PREJUDICE Plaintiffs' "Breach of Contract/Theft or
5  Conversion" claim.

## II. BACKGROUND

The facts are well-known to the parties and are recited at length in the Court's October 15, 2014 Order. (Dkt. 86.) The Court therefore only briefly touches upon the facts as they relate to the instant motion.

Plaintiffs are a professional screenwriting duo. (TAC ¶ 1.) In 2006 they wrote their pilot script, *Square One*. (*Id.*) They subsequently expanded the pilot into a feature-length script, two versions of which are at issue in this action. (TAC ¶¶ 37, 50.)

On February 17, 2011, Plaintiffs purportedly learned that Defendants' *Chicks and Dicks* script used their *Square One* material. (TAC ¶ 67.) *Chicks and Dicks* is the pilot episode of the television series *New Girl*. (TAC ¶¶ 80, 88.) On September 20, 2011, *New Girl* premiered on defendant Fox Broadcasting Company's channel. (TAC ¶ 89.)

Plaintiffs claim that they retained counsel in early 2011 and then informed Defendants that Defendants were infringing on *Square One*. (TAC ¶ 97.) Plaintiffs assert that in June 2011 they paid their then attorneys a $10,000 retainer to pursue their case against Defendants. (TAC ¶ 340.) According to Plaintiffs, their "then attorneys, who are *supposedly* representing Plaintiffs' interests, tell Plaintiffs that the law firm represented the executive producer and director of *New Girl*—defendant Jacob Kasdan—and his family, but that it is okay for this law firm to represent Plaintiffs, just so long as Plaintiffs refrain from suing Kasdan." (TAC ¶ 98.) Plaintiffs assert that their then attorneys told them in writing:

> Regarding the potential Jake Kasdan connection, both Jake Kasdan and his father are long time clients of the firm. We therefore cannot take a position that is adverse to Jake Kasdan. Due to our long-standing relationship with the Kadan, if we were to assert allegations that implicated Jake Kasdan, we likely could be disqualified in this action and, therefore, would be prohibited from continuing to represent you in connection with this dispute. While we feel that the connection to Jake Kasdan is a bit attenuated (based on the facts set forth in your email), if this is something you would like to pursue, we

2

would need to discuss our further involvement in this matter.

(TAC ¶ 98 n.10.)

In mid-2011, the Fox defendants purportedly negotiated with Plaintiffs' then attorneys. (TAC ¶ 98.) In January 2012, the Fox defendants offered Plaintiffs $10,000 to settle this matter. (TAC ¶ 103.) Plaintiffs, "insulted, obviously reject Fox's settlement offer and terminate their relationship with their then conflicted attorneys in February 2012." (TAC ¶ 104.) Plaintiffs claim that until February 2012, they were "unaware of just how tightly aligned Defendants and their then-counsel were in the entertainment industry: The firm representing Plaintiffs also absurdly represented the director and executive produce of *New Girl*, the very show Plaintiffs claimed took their ideas and artistic expression." (TAC ¶ 342.)

On January 16, 2014, Plaintiffs filed this action against Defendants. (Dkt. 1.) On March 4, 2015, this Court issued an Order granting in part Defendants' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"). (Dkt. 96.) In relevant part, the court dismissed without prejudice Plaintiff's breach of implied-in-fact contract claim because it was filed outside the relevant two-year limitations period and neither equitable tolling nor equitable estoppel applied. (Dkt 96: Order at 5–7.) The Court noted that because this was Plaintiff's second attempt to plead this claim, the next dismissal would be with prejudice. (*Id.*)

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' claim for "Idea Theft—Breach of Contract/Theft or Conversion." To the extent that this claim asserts the breach of an implied-in-fact contract, Defendants assert that it is time-barred. To the extent that this is a claim for conversion, Defendants assert that it is preempted.

### A. Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. Proc. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

3

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp*, 486 F.3d 541, 545 (9th Cir. 2007). However, a Court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678.

If a court dismisses the complaint, it will freely grant leave to amend. *DeSoto.*, 957 F.2d at 658. In deciding whether to dismiss with prejudice, courts consider the following factors articulated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Id.* at 182; *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

### B. Breach of Implied in Fact Contract

#### 1. Legal Standard

California law recognizes that an implied-in-fact contract arises when the writer submits material to a producer with the understanding that the writer expects to be paid if the producer uses his concept. *Desny v. Wilder,* 46 Cal.2d 715, 299 P.2d 257 (1956). Such claims are subject to a two-year limitations period. *Benay v. Warner Bros. Entm't*, 607 F.3d 620, 632-33 (9th Cir. 2010) (citing *Blaustein v. Burton*, 9 Cal. App. 3d 161, 185 (Cal. Ct. App. 1970)). California courts generally assume that a breach of implied-in-fact contract claim accrues on "the date on which the work is released to the general public." *Id.* at 633 (citing 4 Nimmer § 19D.07[D]; *Thompson v. Cal. Brewing Co.*, 191 Cal. App. 2d 506, 510 (Cal. Ct. App. 1961)).

Equitable tolling suspends the statute of limitations "as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003). This doctrine requires a balancing of the injustice to the plaintiff if his claim is time-barred against the effect on the public policy furthered by the statute of limitations. *Id.* "The doctrine focuses primarily on the plaintiff's excusable ignorance of the limitations period. . . . [It] is not available to avoid

the consequences of one's own negligence." *Sagehorn v. Engle*, 141 Cal. App. 4th 452, 460 (Cal. Ct. App. 2006) (quoting Lehman v. U.S. 154 F.3d 1010, 1016 (9th Cir.1998)) (internal quotation marks omitted).

To establish that equitable tolling applies, a plaintiff must show: (1) timely notice and a lack of prejudice to defendants, and (2) that she acted reasonably and in good faith. *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978). Equitable tolling of the statute of limitations has been recognized in California only when: (1) a plaintiff is pursuing an alternative remedy in another forum; (2) when a lawsuit is erroneously dismissed and the plaintiff filed an untimely second action; (3) where a defendant fraudulently conceals the cause of action; and (4) in certain actions against an insurer. Justice William F. Rylaarsdam and Justice Paul Turner, *Cal. Prac. Guide Civ. Pro. Before Tr. Stat. of Limitations*, § 6.5 (The Rutter Group 2015).

Equitable estoppel prevents a defendant from asserting the statute of limitations as a defense where "his conduct has induced another into forbearing suit within the applicable limitations period." *See Lantzy*, 31 Cal. 4th at 384. For a defendant to be equitably estopped: "(1) [t]he party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estopped must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury." *Ashou v. Liberty Mut. Fire Ins. Co.*, 138 Cal. App. 4th 748, 766-67 (Cal. Ct. App. 2006) (quoting *Spray, Gould & Bowers v. Associated Internat. Ins. Co.*, 71 Cal. App. 4th 1260, 1268 (1991)).

2. Application

Plaintiffs admit that they filed their case outside of the two-year statutory period for filing a claim for breach of implied-in-fact contract. (TAC ¶ 333.) Nevertheless, they assert that either equitable tolling or equitable estoppel prevents their claim from being time-barred. (TAC ¶¶ 331–358.)

Plaintiffs assert that the statute of limitations should be equitably tolled because there is no prejudice to Defendants and because after learning of Defendants' infringement they immediately retained counsel and notified Defendants. Plaintiffs further claim that equitable

5

tolling applies because of their prior counsel's potential conflict of interest and because Defendants engaged in settlement negotiations with their prior counsel while knowing of counsel's conflict of interest. Plaintiffs base this argument on precedent holding that equitable tolling applied during the time when the plaintiff's attorney, a sole practitioner, was incapacitated due to a severe car accident. *Lewis v. Superior Court*, 175 Cal. App. 3d 366, 370–80.

This Court has twice rejected Plaintiffs' nearly identical argument regarding equitable tolling. For the third time, Plaintiffs' argument is inapt. Plaintiffs admit that their prior counsel informed them of the potential conflict of interest, to which Plaintiffs apparently consented. Plaintiffs also admit that their former counsel engaged in settlement negotiations on their behalf for roughly six months, and successfully obtained a settlement offer from defendants. Though Plaintiffs may have found the $10,000 settlement offer insulting, this Court does not believe that counsel's failure to elicit a larger sum indicates that they were "incapacitated" by their conflict of interest. Nor does the Court believe that this amount indicates that either Plaintiffs' prior counsel or Defendants acted in bad faith. Regardless of Plaintiffs' valuation of their case, this amount is substantially higher than the $750 statutory damages minimum provided by the Copyright Act for each infringed work. 17 U.S.C. § 504(c).[1] Moreover, though Plaintiffs insinuate that prior counsel wouldn't vigorously prosecute their claim, they plead no facts indicating that prior counsel *improperly* refused to file suit or prevented Plaintiffs from filing suit. The Court is similarly unconvinced by Plaintiffs' argument that after terminating their relationship with their prior counsel in February 2012, they could not retain counsel willing to file the instant suit until they retained their currently counsel in early 2013.[2] Moreover, at the hearing held on June 9, 2015, Plaintiffs admitted that they were represented by a different attorney in early 2012—though they allege that the representation was very brief, undertaken gratuitously, and undertaken with the understanding that the attorney in question would not

---

[1] The Court further notes that this is one third of the maximum allowable statutory damages amount for nonwillful infringement of a copyrighted work. 17 U.S.C. § 504(c).

[2] The Court addresses the veracity and propriety of Plaintiffs' attorney's declaration in greater detail below.

6

actually file a lawsuit. Plaintiffs fail to show any compelling reason for the alleged year-long delay between dismissing their first lawyers and hiring their current representation. In sum, Plaintiffs fail to show that their case fits within any of the limited scenarios in which California courts recognize that equitable tolling applies.

Similarly unavailing is Plaintiffs' argument that equitable estoppel applies. Even assuming that Defendants knew that Plaintiffs' prior counsel had a conflict of interest, Plaintiffs have not pled *facts* (as opposed to conclusory argument) showing that Defendants engaged in "unserious" or "bad faith" settlement negotiations by dealing with Plaintiffs' prior counsel. Instead, Plaintiffs readily admit that Defendants offered to pay them $10,000 to settle the case.

For the aforementioned reasons, the Court GRANTS IN PART Defendants' motion to dismiss Plaintiff's "Idea Theft—Breach of Contract/Theft or Conversion" claim, to the extent that it asserts a claim for breach of implied-in-fact contract. This is the third time Plaintiffs have attempted to plead this claim, and the Court previously warned Plaintiffs' that the next dismissal of the claim would be with prejudice. Plaintiffs' third failure to plead this claim indicates that amendment would be futile. The Court therefore DISMISSES WITH PREJUDICE Plaintiff's "Idea Theft—Breach of Contract/Theft or Conversion" claim to the extent it asserts a claim for breach of implied-in-fact contract.

**C.     Conversion**

In the alternative, Plaintiffs attempt to plead their idea theft claim as a claim for conversion (which carries a three year statute of limitations). Defendants assert that this claim is preempted by federal copyright law.

1.     Legal Standard

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . and [that] come within the subject matter of copyright as specified by sections 102 and 103[.]" 17 U.S.C. § 301(a). In the Ninth Circuit, state law claims are preempted by the Act if "(1) the work at issue comes within the subject matter of copyright and (2) the rights granted under state law are equivalent to any of the exclusive rights within the general scope of copyright set forth in the

Act." *Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1057 (C.D. Cal. 2000) (internal quotation marks omitted) (quoting *Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 976 (9th Cir.1987)). A state law claim is not equivalent to the exclusive rights conferred by the Copyright Act if it has an "extra element" which makes the action qualitatively different from one to protect copyright rights. *Id.* (quoting *Del Madera Properties*, 820 F.2d at 977).

To state a conversion claim under California law, a plaintiff must establish: (1) her ownership or right to possession of a certain piece of property; (2) the defendant's conversion of the property by a wrongful act or disposition of property rights; and (3) damages. *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1129 (N.D. Cal. 2001); *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (Cal. Ct. App. 1998). Thus, a conversion claim for tangible property may contain an extra element beyond unauthorized copyright because it requires the plaintiff to prove that the defendant wrongfully obtained possession over a specific piece of property. *Firoozye*, 153 F. Supp. 2d at 1130. Where a plaintiff seeks only damages from a defendant's reproduction of a work, rather than the actual return of a physical piece of property, the conversion claim is preempted. *Id.*

### 2. Application

Plaintiffs do not assert that Defendants stole a tangible copy of their work, nor do they seek such tangible property's return. Instead, Plaintiffs admit that they gave defendants a copy of their work and assert that Defendants improperly appropriated their intangible ideas. Plaintiffs seek damages for Defendants' use of these ideas—i.e. for Defendants' alleged reproduction of these ideas in *Chicks and Dicks* and *New Girl*. Accordingly, Plaintiffs' claim for conversion is preempted by the Copyright Act. *See Firoozye*, 153 F. Supp. 2d at 1130 (finding conversion claim preempted where the plaintiff sent a copy of his work to the defendants, was not seeking the return of tangible property, and instead alleged that the defendants wrongfully reproduced his work). Plaintiffs' reliance on *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1295-96 (11th Cir. 2004) is misplaced. Plaintiffs rely on *Dunlap* for the proposition that ideas are not within the subject matter of copyright because they are

expressly excluded from the Copyright Act's protection. While the Ninth Circuit has not expressly addressed this argument, the majority of circuits that have addressed it hold that the subject matter of copyright for preemption purposes is "broader than copyright protection[.]" *Firoozye*, 153 F. Supp. 2d at 1125; *Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, No. S-04-2728 FCD DAD, 2006 WL 1062070, at *3 (E.D. Cal. Apr. 21, 2006) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455 (6th Cir.2001); *Nat'l Basketball Assn. v. Motorola Inc.*, 105 F.3d 841, 849-50 (2d Cir.1997); *United States v. Berge*, 104 F.3d 1453, 1463 (4th Cir.1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452-53 (7th Cir.1996)).

Additionally, California courts have held that the tort of conversion does not apply to ideas. *See Melchior v. New Line Prods.*, Inc., 106 Cal. App. 4th 779, 793 (Cal. Ct. App. 2003); *see also Italiani v. Metro-Goldwyn-Mayer Corp.*, 45 Cal. App. 2d 464, 466-67 (Cal. Ct. App. 1941) (finding that conversion only applies to tangible property). Thus Plaintiffs may not assert their idea theft claim under a conversion theory.

For the aforementioned reasons, the Court GRANTS Defendants' motion to dismiss this claim to the extent it is premised on a theory of conversion. Moreover, because this idea theft/conversion claim is essentially the same as the idea theft claims that this Court has previously dismissed the Court finds that amendment would be futile. Accordingly, the Court DISMISSES WITH PREJUDICE Plaintiffs' "Idea Theft—Breach of Contract/Theft or Conversion" claim, to the extent premised on conversion.

**D.    Attorney Malofiy's Declaration and Plaintiffs' Request to File A Sur-Reply**

Alongside Plaintiffs' Opposition to Defendants' motion to dismiss, their counsel, Francis Malofiy ("Malofiy"), submitted a declaration in which he asserts that Plaintiffs' First Amended Complaint was mistaken in representing that Plaintiffs retained new counsel in February 2012.[3]

---

[3] At the June 9 hearing, Plaintiffs clarified that they did not expressly allege that they retained new counsel in February 2012. Instead, they acknowledged that this was an implication of the facts pled in their First Amended Complaint ("FAC"). Additionally, Malofiy asserted that he assumed that the FAC alleed that Plaintiffs obtained new counsel in February 2012 because of a statement in this Court's October 15, 2014 Order. In the October 15, 2014 Order, the Court stated that Plaintiffs "apparently contend that the limitations period should be tolled until they retained new counsel in February of 2012." (Dkt. 86: Order at 9.) The Court also noted that "Plaintiffs retained new counsel in February 2012—well within the two year statutory limitations period."

9

(Malofiy Decl. ¶ 2.) Instead, Malofiy asserts that "new counsel was obtained by Plaintiffs in Early 2013[.]" (*Id.*) Notably, Malofiy did not bring this purported error to the Court's attention when Plaintiffs filed their SAC, when opposing Defendants' motion to dismiss the SAC, or when Plaintiffs filed their TAC. Instead, he did not correct this purported error until faced with Defendants motion to dismiss Plaintiffs' TAC and the Court's prior threat that any further dismissals would be with prejudice.

In response to this declaration, Defendants submit evidence showing that on March 14, 2012, an attorney (not Malofiy) sent a letter to Defendants identifying himself as Plaintiffs' "recently retained" counsel. This illustrates that Plaintiffs did have representation at least as of March 2012.

On June 2, 2015, Plaintiffs requested leave to file a surreply. In the proposed surreply, Plaintiffs assert that Malofiy's statement in his declaration referring to "new counsel" was "meant to refer exclusively to Plaintiffs' current counsel—who was the only attorney who ultimately and actually agreed to file a lawsuit on Plaintiffs' behalf." (Pls.' Proposed Sur-Reply, 2.) Notwithstanding Malofiy's apparent belief that he is the only attorney who counts, Plaintiffs' argument regarding his statement's meaning is belied by a commonsense reading of the phrase. There is nothing in the phrase "new counsel was obtained" which limits itself to new counsel actually willing to file a lawsuit. In light of the foregoing, the Court finds Malofiy's declaration and Plaintiffs' subsequently proposed surreply disingenuous. Nevertheless, there is no direct evidence that Malofiy or Plaintiffs lied or acted in bad faith.

---

(*Id.*) To the extent that the Court's prior Order was ambiguous, the Court now clarifies that it did not find that Plaintiffs expressly asserted that they retained new counsel in February 2012. Moreover, the Court's conclusion in the October 15 Order that Plaintiffs failed to show that equitable tolling or estoppel applied to their contract claim was not based on either of these two statements regarding when Plaintiffs obtained new counsel. Thus the Court's conclusion would stand regardless of whether Plaintiffs obtained new counsel in 2012 or 2013.

10

## IV. ORDER

For the aforementioned reasons, the Court GRANTS Defendants' motion to dismiss Plaintiffs "Idea Theft—Breach of Contract/Theft or Conversion" claim. Because the Court finds that leave to amend would be futile, the Court DISMISSES WITH PREJUDICE Plaintiffs' "Idea Theft—Breach of Contract/Theft or Conversion" claim.

**IT IS SO ORDERED.**

Dated: June 12, 2015

STEPHEN V. WILSON
United States District Judge